## BENTLEY v. RINGER et al.
### No. 14484.

Court of Civil Appeals of Texas. Dallas.
April 18, 1952.

Fritz, Goldberg & Alexander, Dallas, for appellant.

Lane & Savage, Dallas, for appellees.

CRAMER, Justice.

This appeal is from a summary judgment for $2,500, the amount of a check sued on. Appellee Mrs. Ringer (plaintiff below), payee in the check, joined by her husband, brought the suit against appellant Bentley, maker of the check, after his Bank declined payment and Bentley, stopped payment thereon.

Appellant Bentley (defendant below) answered that the Ringers on April 10, 1951, entered into a written contract with him to purchase certain property at 1607 Perryton Drive in the City of Dallas for a consideration of $13,500, payable $3,500 cash, of which $2,500 was deposited with him, plus $10,000 to be raised by the Ringers by their securing a first lien of $10,000 thereon through a mortgage agency. Bentley at that time had theretofore contracted with third parties, who were the owners of the property, to purchase such property from them. The answer further alleged that on or about May 7, 1951 the Ringers, without reasonable cause, or at least through no fault or dereliction of his, breached said contract by notifying him that they did not desire to perform it; could not obtain a sufficient loan on the property, and that they wanted their $2,500 back; that the Ringers were induced to breach their contract because of the following circumstances among others, to wit: The owners, with whom Bentley had his contract to purchase the property, prior to April 10, did not desire to go through with the contract with Bentley and set about discouraging Mrs. Ringer from buying the property from Bentley so as to cut off the source of funds by which Bentley was to pay the owners for the property. The owners also failed prior to May 16 to complete the construction and plant shrubs necessary to make the property eligible for an FHA loan. Such acts, for which Bentley alleges he was not responsible, discouraged Mrs. Ringer about the purchase and when Mrs. Ringer expressed a desire to cancel her contract, he, Bentley, wanted to be cooperative, and, not knowing the above facts, wrote his check, sued on here, under a mistake as to the full facts involved, and that under such facts his check was without consideration. He further pled that the owners have since attempted to sell the property to fourth parties at a time when he, Bentley, was ready and willing to buy, and he still is ready and willing to buy, if Mrs. Ringer is willing to buy from him, or, if Mrs. Ringer is ordered to specifically perform her contract to buy from him. Bentley also sought in the same suit, in a cross-action, to enforce specific performance against the owners of the property with whom he had the contract to purchase and with whom he had made a $1,250 deposit on the purchase price. He further alleged that he was in danger of losing his $1,250 deposit with the owners if specific performance of his contract with Mrs. Ringer et vir. should not be ordered.

Bentley further alleged that after he discovered that the owners and their agents were showing the property to other prospects, he was justified in failing to make a deposit in his Bank to cover the $2,500 check sued on here and in notifying his bank to stop payment thereon. Bentley further alleged that the written contract (although he had voluntarily returned the deposit on the contract to Mrs. Ringer) was still binding on the Ringers, and that the owners with whom he contracted to purchase the property should be joined as parties thereto and required to specifically perform their sales contract upon his payment of the sales price recited in the contract.

In the alternative, Bentley asserted the owners of the property were responsible for the breach of the contract, and that such owners should, if anyone is liable therefor, pay the $2,500 to the Ringers. Bentley also pled that the owners of the property con-

tracted to authorize and appoint him as exclusive agent to sell such property for them and that they would construct the house to meet FHA specifications and have it ready for occupancy April 1, 1951; that his failure to fulfill his agreements with the Ringers was the result of the breach of the contract by the owners with him; therefore such owners should have to pay the $2,500 sued for by the Ringers.

Two days after the filing of his answer, the Ringers made a motion for the dismissal, or severance of Bentley's cause, or causes, of action against the owners who were impleaded by him, but who had not at that time, or so far as this record shows, before the judgment was rendered, been served with process; and in the alternative that Bentley's alleged joint action against them and the owners be severed, and after such dismissal or severance, a summary judgment be entered in their favor for $2,500; asserting that the owners were misjoined with them in Bentley's suit, in that such cause of action against the owners did not arise out of the transaction between such owners and Bentley, and, if Bentley had a cause of action against the owners, it should be severed so that Bentley could proceed thereon in said severed cause. The Ringers alleged that, after such severance, no genuine issue of fact would exist between them and Bentley; therefore summary judgment for $2,500 in their favor was in order.

Bentley denied such allegations as to misjoinder, and pled affirmatively that if there was a misjoinder, there was no ground for summary judgment against him. He denied that he received a valuable consideration for the check; asserted there was a mistake of fact in the writing of the check; that his original answer presented a legal defense to the Ringers' petition and that his cause of action could not rightly be severed from this cause because of Rule 97(b), Texas Rules of Civil Procedure.

The court, after hearing, sustained the motions, severed Bentley's action against the owners and rendered summary judgment for the Ringers against Bentley for $2,500, interest, costs, etc., from which

judgment Bentley has duly perfected this appeal. He briefs four points of error, in substance, that the trial court erred in granting the summary judgment against him: (1–2) Because the pleadings and evidence raised issues of fact on want of consideration, and on fraud and mistake; (3) because the pleadings raised an issue against the impleaded parties-defendant; and (4) because he had filed a compulsory counter claim against the Ringers which was not at issue at the time of the hearing on the motion for summary judgment. Points 1 and 2 will be considered together. Appellees countered these points by asserting Bentley's answer alleged and admitted the rescission of the sales contract by mutual agreement and that the pleadings raise no issue of fraud or mistake. In this, appellees are correct. True, Bentley wrote the check sued on by the Ringers under a mistake of fact, but it was not a mutual mistake of fact; was not induced by the Ringers; but was brought about (under his own allegations) by the owners with whom he had a separate contract. The Ringers were, under all the pleadings, innocent and without knowledge of the purpose of the owners. Bentley's action against the owners with whom he had a contract to purchase the property he sold to the Ringers, was separate and distinct from his contract to sell to the Ringers. There were no conditions in their contract with Bentley, nor was it contingent upon the performance by the third party owners of their contract with Bentley.

Under such undisputed facts, when Bentley and the Ringers cancelled their contract, and Bentley returned the $2,500 deposit made by the Ringers, by delivering to the Ringers the $2,500 check sued on, the purchase contract was by such agreement and transaction rescinded as between them; and thereafter the Ringers were not necessary nor proper parties to Bentley's separate claim against the third party owners, either on the count for specific performance against the owners; or the count for the return of Bentley's $1,250 deposit thereunder. Bentley having voluntarily released the Ringers from their contract with him by returning to them their $2,500 deposit on

such contract, he, as a matter of law, had no joint cause of action against the Ringers and the owners, who undisputedly had no dealings with each other, contractual or otherwise. Points 1 and 2 are overruled.

Points 3 and 4 will be considered together. They are countered by appellees' asserting, (3) that Bentley's suit against the owners did not arise out of the same transaction as the one involved in this appeal and that if it was in any way related to such counter claim, then it was rightfully severed because it failed to state a cause of action as a matter of law; and (4) the counter claim failed because Bentley alleged and admitted the original contract of sale had been rescinded and the check sued on evidenced his return of their deposit on such contract.

Under the pleadings the Ringers were in no way responsible for the acts of the third party owners with whom Bentley had his contract. Bentley was unable to perform such contract with the Ringers and they were entitled to the return of their deposit, and such deposit had been, by the delivery of the check sued on by the Ringers, voluntarily returned to the Ringers. If the owners were responsible for the respective contracts not being completed, they may be liable to Bentley. Such liability, however, would not excuse Bentley from furnishing title to the Ringers. When he failed to so deliver title to the Ringers, they were entitled to the return of their deposit. Under the record here they were in no position to enforce the possible remedy of specific performance since Bentley did not own the property. When Bentley returned the deposit by the check, he, as a matter of law, acknowledged his inability to perform and terminated the contract. The undisputed facts show Bentley's cross-action or counter claim did not show a cause of action as a matter of law, and further that there was a consideration for the check. Points 3 and 4 are, under such record, overruled.

There being no reversible error in the trial court's judgment, it is