Khosrow SADEGHIAN, Appellant,

v.

CITY OF DENTON, County of Denton, Denton ISD, and Denton County Education District, Appellees.

No. 2–00–063–CV.

Court of Appeals of Texas, Fort Worth.

Dec. 7, 2000.

Law Office of Michael R. Boling and Rodney L. Hubbard, Dallas, for Appellant.

Linebarger, Heard, Goggan, Blair, et al., Edward Lopez, Jr., Dallas, McCreary, Veselka, Bragg, & Allen, P.C., Kirk Swinney, Austin, Sawko & Burroughs, L.L.P., Mark A. Burroughs, Denton, for Appellee.

Panel A: CAYCE, C.J.; RICHARDS and HOLMAN, JJ.

## OPINION

RICHARDS, Justice.

### Introduction

■ Appellant purchased real property subject to a tax lien for the years 1990 through 1995. He sued the City of Denton, the County of Denton, the Denton ISD, and the Denton County Education District (collectively "appellees") after his request for a refund for taxes he paid under protest was denied or ignored. Appellant also filed an application for a declaratory judgment asking for a ruling that no lien ever attached to the real property he purchased, thereby entitling appellant to a refund of money paid under protest for delinquent taxes, penalties, interest, and legal fees. The trial court denied appellant's motion for summary judgment, but granted appellees' motions for summary judgment. Appellant argues in one issue that the trial court erred in denying his motion for summary judgment and granting appellees' motions.[1] We will affirm.

---

1. Appellant did not oppose City of Denton's    motion for summary judgment. Because he

## Statement of Facts

On October 30, 1985, Colonial Savings and Loan Association of Western Kansas ("Colonial Savings") loaned $775,000 to Oakhill Joint Venture ("Oakhill"), a Texas joint venture, and received a mortgage lien on approximately eighty acres of land in Denton County, Texas. Oakhill executed a Renewal and Modification of Deed of Trust Lien in favor of Colonial Savings on October 31, 1986 and again on October 31, 1987.

Colonial Savings was declared insolvent on September 21, 1989. The Resolution Trust Corporation ("RTC") was appointed receiver of Colonial Savings and thereby became a lienholder of the property. On September 27, 1995, RTC, acting in its capacity as receiver, executed an Assignment of Deed of Trust from Colonial Savings to RTC Land Assets Trust 1995 NP2B ("RTC Trust"). RTC Trust foreclosed on the land and sold it to NP2 South, L.P. for $51,153 on April 2, 1996. NP2 South then sold the land to appellant on April 12, 1996 for $38,000.

After appellant bought the land, appellees threatened to foreclose on the property if the delinquent taxes for the tax years 1990 through 1995 were not paid. Appellant paid a total of $115,302 .64 in delinquent taxes under protest. After appellant's repeated requests for a refund were ignored or denied, he filed suit on January 2, 1998. Appellant's motion for summary judgment was denied and Denton County's motion for summary judgment was granted on July 16, 1999. Denton Independent School District and Denton County Educational District were granted summary judgment on August 16, 1999. City of Denton's unopposed motion for summary

judgment was granted on January 14, 2000.

## Standard of Review

The standards for reviewing a motion for summary judgment are well established. The movant has the burden of showing that there is no genuine material fact issue and that it is entitled to judgment as a matter of law. *Ryland Group, Inc. v. Hood,* 924 S.W.2d 120, 121 (Tex. 1996). A defendant is entitled to summary judgment if the summary judgment evidence establishes, as a matter of law, that at least one element of a plaintiff's cause of action cannot be established. *Science Spectrum, Inc. v. Martinez,* 941 S.W.2d 910, 911 (Tex.1997).

## Application of Section 1825(b) to RTC

The RTC is governed by 12 U.S.C. § 1441a. *See* 12 U.S.C.A. § 1441a (West Supp.2000). Under section 1441a(b)(4)(A), the RTC has "the same powers and rights to carry out its duties ... as the Federal Deposit Insurance Corporation has under ... [12 U.S.C.A. §§ 1821, 1822, and 1823]." 12 U.S.C.A. § 1441a(b)(4)(A) (West Supp .2000). "With respect to any asset acquired or liability assumed pursuant to this section, the [FDIC] shall have all of the rights, powers, privileges, and authorities ... under sections 1821 and 1825(b)." 12 U.S.C.A. § 1823(d)(3)(A) (West 1989). Therefore, section 1825(b) applies to the RTC. *See RTC Commercial Assets Trust 1995–NP3–1 v. Phoenix Bond & Indem. Co.,* 169 F.3d 448, 456 (7th Cir.1999).

## Application of Section 1825(b) to Mortgage Liens

"No property of the Corporation shall be subject to levy, attachment, gar-

---

is not allowed to complain about it for the first time on appeal, his issue is waived with respect to City of Denton. *See Romero v.*

*State,* 927 S.W.2d 632, 634 n. 2 (Tex.1996). We will, however, address the merits of his issue with respect to the other appellees.

nishment, foreclosure, or sale without the consent of the Corporation, nor shall any involuntary lien attach to the property of the Corporation." 12 U.S.C.A. § 1825(b)(2) (West 1989). This language is clear that an involuntary lien cannot attach to property that is owned by the RTC when it is acting as a receiver. *Irving ISD v. Packard Prop.*, 970 F.2d 58, 61 (5th Cir.1992). The effect of section 1825(b)(2) is that liens may not attach to property while it is owned by the RTC. *Id.*

In this case, the RTC held only a mortgage lien on the property. Appellant is correct that a lien interest is property within the context of section 1825(b)(2). It is settled federal law that "property" includes both lien and fee interests. *Matagorda County v. Russell Law*, 19 F.3d 215, 221 (5th Cir.1994); *State v. Bankerd*, 838 S.W.2d 639, 641 (Tex.App.—San Antonio 1992, writ denied).

However, while a lien may be a property interest, it is treated differently from a fee interest. A lienholder does not own legal title to the property on which he holds a lien, and thus, a lienholder is not a property owner. *First Nat'l Bank of Bellaire v. Huffman ISD*, 770 S.W.2d 571, 573 (Tex.App.—Houston [14th Dist.] 1989, writ denied), *cert. denied*, 494 U.S. 1091, 110 S.Ct. 1838, 108 L.Ed.2d 967, (1990). Property taxes are assessed against the fee interest and not against the lien interest. *See* Tex.Tax Code Ann. § 25.06(a) (Vernon Supp.2001); *Dallas Cent. Appraisal Dist. v. Jagee Corp.*, 812 S.W.2d 49, 51 (Tex. App.—Dallas 1991, writ denied) (holding that owner of land, not lessee, is responsible for payment of ad valorem taxes). Therefore, because the RTC held only a lien interest and did not acquire an ownership interest in the property during the tax years in question, "1825(b)(2) does not act as a bar to attachment of a tax lien on the underlying real property during the period that the mortgage[ was] held in receivership by the RTC." *Casino Reinvestment Dev. Auth. v. Cohen*, 321 N.J.Super. 297, 728 A.2d 868, 870 (1998); *see Matagorda County*, 19 F.3d at 219. Thus, appellees' tax liens were properly attached, and summary judgment was proper. Appellant's sole issue is overruled.

### Conclusion

Having overruled appellant's issue, we affirm the trial court's judgment.