11th
Court of Appeals

                                                                  Eastland,
Texas 

                                                                        Opinion

 

Danny J. Hawk and
Mitchell R. Henson

Appellants

Vs.                   No.
11-02-00097-CV B Appeal from Dallas County

E.K. Arledge, Inc.; Cynthia Diane Arledge
Robertson; 

and Founders National
BankBSkillman

Appellees

 

E.K.
Arledge, Inc. (Arledge) sued Danny J. Hawk and Mitchell R. Henson, appellants,
to quiet title to two tracts of land.[1]   Appellants claim title to the tracts by
virtue of a substitute trustee=s deed which they received following a vendor=s lien foreclosure and sale.  Arledge claims title to the same tracts by
virtue of a sheriff=s deed
which it received following foreclosure and sale under ad valorem tax
liens.  The trial court entered a
summary judgment in favor of Arledge, denied appellants= motion for summary judgment, and awarded
attorney=s fees to all appellees.  The outcome of other claims in the lawsuit
are not presented to us.  The effect of
the summary judgment entered by the court was to quiet title to the properties
in Arledge.  We modify the judgment of
the trial court to delete the award of attorney=s fees to appellees; and, as modified, we affirm.








From
February 17, 1988, until June 3, 1997, the date of the sale following the tax
lien foreclosure under which Arledge claims title, James B. Johnson was the
owner of the fee title to the two tracts of land involved in this lawsuit.  During all of that time, the property was
subject to deed of trust liens securing various notes.  On February 1, 1990, the Resolution Trust
Corporation (RTC) was appointed receiver for the owner of the notes and deeds
of trust.  RTC subsequently assigned the
notes and liens to South Star Management Company, Inc..  After various conveyances, the notes and
liens eventually were assigned to National Heritage Life Insurance
Company.  On November 21, 1995, a
receiver was appointed for National Heritage Life Insurance Company (NHL
Receiver).  In 1998, NHL Receiver
transferred the notes and deeds of trust to appellants.  In January and February 1999, the substitute
trustee under those deeds of trust held non-judicial foreclosure sales of the
properties, and conveyed the properties to appellants, the purchasers at the
foreclosure sale. 

Meanwhile,
in 1990, various taxing authorities joined in a suit to collect delinquent ad
valorem taxes on both tracts of land. 
In 1995, RTC filed a disclaimer in the tax suit.  In 1996, National Heritage Life Insurance
Company, In Liquidation, was named a party in the tax suit and filed its answer
on October 11, 1996.  The suit was not
tried until 1997; and, after amending the lawsuit, the taxing authorities
sought recovery of delinquent taxes for the years 1988-96.  On January 22, 1997, some two years prior to
the deed of trust foreclosures under which appellants claim, the trial court
foreclosed the tax liens and ordered the properties sold.  The sheriff sold the properties for
$78,889.53 more than the taxes and costs due; Johnson sought and was paid that
excess.  On June 3, 1997, the sheriff
deeded both tracts by sheriff=s deed to Arledge=s predecessor in title. 
Although there were some changes in Arledge=s title after its predecessor had deeded the
properties to it, any title arising by virtue of the sheriff=s deed was held solely by Arledge at the time
of the filing and of the trial of this case.

Appellants
present five issues on appeal. 
Appellants= first
issue on appeal is that the trial court erred when it granted appellees= motion for partial summary judgment.  Appellants argue, in part, that the tax lien
foreclosure sale did not vitiate the liens under which their title
emanates.            We review a traditional motion for summary judgment in
accordance with the following standards: (1) the movant for summary judgment
has the burden of showing that there is no genuine issue of material fact and
that it is entitled to judgment as a matter of law; (2) in deciding whether
there is a disputed material fact issue precluding summary judgment, evidence
favorable to the non-movant will be taken as true; and (3) every reasonable
inference must be indulged in favor of the non-movant and any doubts resolved
in its favor.  TEX.R.CIV.P. 166a;
American Tobacco Company, Inc. v. Grinnell, 951 S.W.2d 420 (Tex.1997); Nixon v.
Mr. Property Management Company, Inc., 690 S.W.2d 546 (Tex.1985).  No-evidence motions for summary judgment are
reviewed in the same manner as other motions for summary judgment.  Hight v. Dublin Veterinary Clinic, 22 S.W.3d
614 (Tex.App. B Eastland 2000, pet=n den=d).  








When there
are competing motions for summary judgment and the trial court grants one
motion and denies the other, the reviewing court should review the summary
judgment evidence on both sides and determine all questions presented.  Bradley v. State ex rel. White, 990 S.W.2d
245 (Tex.1999).  The standard of review
in cases in which the trial court has denied a motion for summary judgment is
the same standard used to review cases in which the trial court has granted a
motion for summary judgment.  Eastland
County Cooperative Dispatch v. Poyner, 64 S.W.3d 182, 187 (Tex.App. - Eastland
2001, pet=n den=d).

The trial
court did not specify the grounds for its summary judgment.  When a trial court does not specify the
grounds relied on for the ruling, summary judgment will be affirmed on appeal
if any of the theories advanced are meritorious.  Cincinnati Life Insurance Company v. Cates, 927 S.W.2d 623
(Tex.1996); State Farm Fire & Casualty Company v. S.S. and G.W., 858 S.W.2d
374 (Tex.1993).

Appellants
argue that the tax foreclosure was ineffective as against their interests
because of the application of 12 U.S.C.A. ' 1825(b)(2) (West 2001), a part of the Financial Institutions Reform,
Recovery and Enforcement Act (FIRREA), which provides as follows:

No
property of the Corporation shall be subject to levy, attachment, garnishment,
foreclosure, or sale without the consent of the Corporation, nor shall
any involuntary lien attach to the property of the Corporation.  (Emphasis added)

 








Appellants
argue that Section 1825(b)(2) requires that NHL Receiver=s consent should have been obtained before a
foreclosure of the tax liens could take place. 
They argue that the consent which would have been required from RTC by
Section 1825(b)(2) is a protection which is extended to Adownstream assignees@ of RTC. 
We disagree.  Here, RTC was not
the owner of the interest at the time of the foreclosure of the tax liens.  Our concern in this case is with the time of
the enforcement of the tax liens, not the time at which they attached.[2]  Because RTC was not the owner of the deed of
trust liens at the time of the foreclosure of the tax liens, RTC=s consent was not required.  Matagorda County v. Russell Law, 19 F.3d 215
(5th Cir. 1994); see also Holy Cross Church of God in Christ v. Wolf, 44 S.W.3d
562 (Tex.2001)(discussing FIRREA and the unavailability of the extended
six-year statute of limitations to a Adownstream assignee@ when the subject cause of action did not accrue while Federal Deposit
Insurance Company held the property).[3]  It follows that, since RTC=s consent was never required, such protection
could not be extended to Adownstream assignees@ such as appellants.  Because we
have determined that the consent of RTC=s assignee was not required, we will not address the issue of whether
that consent was obtained.

Appellants
also attack the judgment and sale in the tax suit.  They contend that, if the tax judgment and tax sale are construed
as requiring that both tracts be sold together, then the judgment violates the
provisions of TEX. CONST. art. VIII, ' 15 as well as TEX. CIV. PRAC. & REM. CODE ANN. ' 34.042 (Vernon 1997).  After reviewing the judgment and the order
of sale, we believe that the judgment and order permit both tracts to be sold
together.

In Herbert
v. Smith, 183 S.W.2d 191 (Tex.Civ.App. B Austin 1944, writ ref=d w.o.m.), the complaint was made that the sheriff sold the tracts,
upon which tax liens had been foreclosed, together rather than separately.  The court stated that the fact that the
properties were sold together did not render the judgment, the order of sale,
or the sheriff=s deed void. 
Therefore, they could not be attacked collaterally.  

The same
result was reached by the court in Cockrell v. Steffens, 284 S.W. 608, 609
(Tex.Civ.App. - Eastland 1926, no writ). 
There, this court stated:

Assignments
attacking the judgment because the lien was foreclosed for the gross amount of
taxes due on all lots and not against each lot separately...must be
overruled.  Judgments in tax suits are
of equal dignity with judgments generally, and neither the judgment nor the
sale thereunder is subject to attack collaterally for irregularities.

 








A judgment
of a court of general jurisdiction is not subject to collateral attack in
another court of equal jurisdiction unless it is void.  A judgment is void only when the court had
no jurisdiction of the parties or property, no jurisdiction of the subject
matter, no jurisdiction to enter the particular judgment, or no capacity to act
as a court.  Browning v. Placke, 698
S.W.2d 362, 363 (Tex.1985).

As in Cockrell
and Herbert, the judgment, order, and sale in this case are not void and
may not be collaterally attacked.

Even if we
are incorrect in our holding that the judgment, order, and sale are not void,
there is another reason that appellants cannot prevail upon this issue.  The summary judgment proof shows that both
Johnson and NHL Receiver had knowledge that the sheriff would sell the
properties together if no one requested otherwise; no one did. 

Appellants
rely upon Keda Development Corporation v. Stanglin, 721 S.W.2d 897 (Tex.App. -
Dallas1986, no writ).  In Stanglin,
the owner of the property at the time of the foreclosure and sale, under city
paving liens, complained that the property foreclosed upon had been foreclosed
and sold in bulk rather than in individual tracts.  The purchaser at the sale argued that the owner should be
estopped from complaining because several years had elapsed since the date of
the judgment.  The appellate court
disagreed.  However, the facts in Stanglin
are distinguishable.  Here, the parties
to the tax suit were on notice of the manner in which the properties would be
sold.  Such was not the case in Stanglin,
where the court in Keda Development Corporation v. Stanglin, supra at 902
noted:

We disagree since the right of Stanglin to
contest the sale occurred after the sale was conducted when he became aware of
the manner in which his properties were sold. 
He had no occasion to complain earlier.

 

We hold
that, as a matter of law, Arledge held a superior title to the properties by
virtue of the sale following the tax lien foreclosure.  Section 1825(b)(2) did not protect
appellants from that foreclosure and sale. 
Additionally, appellants may not collaterally attack the judgment,
order, and sale under the circumstances of this case.  Further, appellants= predecessors participated in the tax suit and sale and were given the
opportunity to demand that the property be sold in a different fashion.  The trial court did not err when it granted
summary judgment that Arledge held the superior title.  It necessarily follows that neither did the
trial court err when it refused to grant summary judgment to appellants.  Appellants= first three issues on appeal are overruled.  In view of our holding on the first three issues on appeal, we
need not discuss appellants= fourth issue.








In their
fifth issue on appeal, appellants challenge the award of attorney=s fees to appellees.  Appellees sought attorney=s fees under the Uniform Declaratory Judgment
Act, TEX. CIV. PRAC. & REM. CODE ANN., '' 37.001 et seq. (Vernon 1997 & Supp. 2003).   In particular, Section 37.009 provides: AIn any proceeding under this chapter, the
court may award costs and reasonable and necessary attorney=s fees as are equitable and just.@  Any
suit that involves a dispute over the title to land is, in effect, an action in
trespass to try title, whatever its form. 
Johnson v. Bryan, 62 Tex. 623 (1884); 
Jordan v. Exxon Corporation, 802 S.W.2d 880 (Tex.App. ‑ Texarkana
1991, no writ).  The reality in this
lawsuit is that it involves the issue of title.  Attorney=s fees
are not recoverable when the real essence of the suit is one in trespass to try
title.  Southwest Guaranty Trust Company
v. Hardy Road 13.4 Joint Venture, 981 S.W.2d 951, 957 (Tex.App. B Houston [1st Dist.] 1998, pet=n den=d).  The claim for declaratory
relief is Amerely incidental to the title issues@ and attorney=s fees are not recoverable.  See
John G. and Marie Stella Kennedy Memorial Foundation v. Dewhurst, 90 S.W.3d
268, 289 (Tex.2002); see also Shepard v. Boone, ___ S.W.3d ___ (No.
11-02-00043-CV, Tex.App. B Eastland, January 23, 2003, no pet=n h.)( n.1).  We agree with
appellants= fifth issue on appeal.

The
judgment of the trial court is modified to delete the award of attorney=s fees to appellees, and, as modified, is
affirmed.

 

JIM
R. WRIGHT

JUSTICE

 

March 20, 2003

Panel consists of: Arnot, C.J., and

Wright, J., and McCall, J.











[1]Cynthia Diane Arledge Robertson and Founders National
BankBSkillman were brought into the lawsuit as third-party
defendants, but they make no claim to the ownership of the fee title to either
of the two tracts of land involved in this lawsuit.





[2]For a discussion of the attachment of tax liens (as
opposed to the foreclosure of tax liens), see Sadeghian v. City of Denton, 49
S.W.3d 403 (Tex.App. B Fort Worth 2000, pet=n
den=d); PNL Asset Management Company, L.L.C. v. Kerville
Independent School District, 37 S.W.3d 80 (Tex.App. B San Antonio 2000, pet=n
den=d).  See TEX.
TAX CODE ANN. ' 32.05 (Vernon 2001).





[3]The court in Matagorda discussed the policies
behind affording protection to assignees of the RTC or FDIC in some instances
and not in others, and we will not discuss those policy issues further here.